UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA
JOHNSTOWN DIVISION

| | |
|---|---|
| Christopher Snyder,<br><br>         Plaintiff,<br><br>v.<br><br>Norfolk Southern Railway Co.,<br><br>         Defendant. | Case No.: 3:23-cv-59<br><br>**COMPLAINT**<br>(JURY TRIAL DEMANDED) |

## INTRODUCTION

1. Chris Snyder worked for Norfolk Southern Railway Co. for nearly two decades. Then, he suffered a neurological event that necessitated him taking medical leave. Snyder worked hard to recover and was cleared to return to work without restrictions by his doctors, including relevant specialists, in March of 2017.

2. Norfolk Southern, however, refused to return Snyder to work, first telling him that he had to wait at least six months from when he had surgery for the neurological event and then, after six months passed, and without anything else having changed, telling him he needed to wait at least another six months.

3. Afraid that Norfolk Southern would continuously extend his forced leave,[1] Snyder filed a charge with the Equal Employment Opportunity commission. Only then, did Norfolk Southern relent and finally reinstate him.

4. While Snyder is now back at work, not only did he and his family needlessly have

---

[1] Snyder's concern was particularly justified given Norfolk Southern's pattern and practice of discriminating against its disabled employees. *See* www.eeoc.gov/newsroom/norfolk-southern-pay-25-million-settle-eeoc-systemic-disability-discrimination-lawsuit.

to struggle for the year he was wrongfully withheld from service, but also he has a year less of service than he should for purposes of qualifying for his pension.

5. Snyder losing time towards his pensions and his family being under extra pressure during an already stressful time in their lives should not have happened. What Norfolk Southern did was unnecessary, indecent, and violates the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101(a), *et seq.* Indeed, that Norfolk Southern's actions violate the ADA is something that has already been found by the EEOC.

## PARTIES

6. Snyder resides in Altoona, Pennsylvania.

7. Norfolk Southern, which is headquartered in Atlanta, Georgia, operates trains in the eastern United States, including Pennsylvania.

## JURISDICTION AND VENUE

8. This Court has jurisdiction under 28 U.S.C. § 1331.

9. Venue is proper under 28 U.S.C. § 1391 because Snyder resides in this district, Norfolk Southern operates in this district, and the illegal conduct occurred in this district.

## FACTUAL ALLEGATIONS

10. Snyder was hired by Norfolk Southern on February 28, 2005 and has worked as an electrician for the railroad for nearly 18 years.

11. On March 14, 2016, Snyder suffered a seizure.

12. Snyder underwent brain surgery for the seizure-causing issue on January 24, 2017.

13. Two months after Snyder's surgery, in March 2017, three different specialists cleared Snyder to return to work without restrictions.

14. Despite the fact that his doctors cleared Snyder without restrictions, Norfolk

Southern refused to return Snyder to work, telling him he had to wait six months from after his surgery until he could return to work.

15.     Near the end of that six-month period, in July 2017, Norfolk Southern extended the period, claiming Snyder now had to wait a year after surgery for it to allow him to return to work.

16.     Though Snyder was fully cleared by multiple specialists to return to work without restrictions, Norfolk Southern kept Snyder from work for nearly a year, finally returning him to work in February 2018.

17.     Norfolk Southern did so without ever examining Snyder, talking to his doctors, or consulting relevant specialists.

18.     There was, simply put, no basis for withholding Snyder from service after he was cleared by his doctors.[2]

19.     Even had Snyder's condition warranted some restrictions, they could have easily been accommodated.

20.     Accordingly, Snyder filed a charge with the Equal Employment Opportunity Commission, which thoroughly investigated Snyder's claim and found probable cause exists to believe Norfolk Southern violated the ADA.

21.     Only after Snyder filed a charge with the Equal Employment Opportunity Commission did Norfolk Southern finally return Snyder to service.

22.     Although Snyder is now back at work, that does not undo his family having needlessly struggled more than was necessary during an already tough time.

---

[2] To the extent Norfolk Southern may argue that returning Snyder to service sooner would have been a safety concern, this is not only untrue but also belied by the extent to which Norfolk Southern lobbies against safety measures when such measures conflict with its profit. *See, e.g.*, www.nbcnews.com/politics/white-house/norfolk-southern-derailment-revives-railway-safety-battle-washington-rcna71421.

23.     Snyder is also a year further away from his pension than would otherwise be the case.

## CAUSES OF ACTION

### Violation of 42 U.S.C. § 12101, *et seq.*

24.     Norfolk Southern is Snyder's employer within the meaning of the ADA.

25.     At all relevant times, Snyder was disabled within the meaning of the ADA.

26.     Snyder is a qualified individual within the meaning of the ADA.

27.     Section 12112(a) of the ADA prohibits employers from discriminating against employees on the basis of disability in regard to "job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions and privileges of employment."

28.     Section 12112(b)(1) of the ADA defines "discriminat[ing] against a qualified individual on the basis of disability" to include "limiting, segregating, or classifying a job applicant or employee in a way that adversely affects the opportunities or status of such applicant or employee because of the disability of such applicant or employee."

29.     Discriminating against a qualified individual with a disability also includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee . . ." 42 U.S.C. § 12112(b)(5)(A).

30.     Norfolk Southern discriminated against Snyder on the basis of disability when it withheld him from service for eleven months without justification and/or failed to accommodate whatever restrictions it believed his condition necessitated during that time period.

31.     Because Norfolk Southern violated 42 U.S.C. § 12112, Snyder has suffered and will continue to suffer loss of income, emotional distress, and other damages. Snyder is also

entitled to attorney's fees and costs in connection with these claims.

32. Norfolk Southern committed the above-alleged acts with reckless or deliberate disregard for Snyder's rights. As a result, Snyder is entitled to punitive damages.

## **REQUEST FOR RELIEF**

33. Snyder requests that the Court find Norfolk Southern acted in violation of the ADA.

34. Snyder further requests that the Court order Norfolk Southern to:

- pay to him an award for compensatory damages arising from loss of income and benefits in an amount to be determined by the trier of fact;

- pay to him an award for garden-variety emotional distress in an amount to be determined by the trier of fact;

- pay to him an award for costs (including litigation and expert costs), disbursements, and attorney's fees; and

- pay to him an award for $300,000 for punitive damages for each violation of the ADA.

35. Snyder further requests that the Court order judgment against Norfolk Southern for all other relief available under the ADA and such other relief as the Court deems just and equitable.

Dated: April 4, 2023

**COUNSEL FOR PLAINTIFF**

Nicholas D. Thompson, WI 1079903
*Pro Hac Vice Forthcoming*
Casey Jones Law Firm
3520 Cherryvale Avenue, Suite 83
Appleton, WI 54913
Phone: (757) 477-0991
Email: nthompson@caseyjones.law

/s/ John H. Coston IV
John H. Coston IV
VA Bar No. 83774
The Moody Law Firm
500 Crawford Street, Suite 200
Portsmouth, VA 23705
Phone: (757) 393-4093
Email: jcoston@moodyrrlaw.com