**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CHRISTOPHER SNYDER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No. 3:23-CV-00059** |
| **v.** | ) | |
| | ) | |
| **NORFOLK SOUTHERN RAILWAY COMPANY,** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

# MEMORANDUM OF LAW IN SUPPORT OF NORFOLK SOUTHERN'S MOTION FOR SUMMARY JUDGMENT

**BUCHANAN INGERSOLL & ROONEY, PC**
Kathleen Jones Goldman
PA ID No. 90380
Carl Misitano
PA ID No. 329904
501 Grant Street, Suite 200
Pittsburgh, PA 15219
Phone: (412) 562-8800
Fax: (412) 562-1014
kathleen.goldman@bipc.com
carl.misitano@bipc.com

*Counsel for Norfolk Southern Railway Company*

# TABLE OF CONTENTS


INTRODUCTION .......... 1

STATEMENT OF UNDISPUTED FACTS .......... 1

A. Plaintiff is Employed in a Safety-Sensitive Position. .......... 1

B. Plaintiff Suffered from a Long-term Seizure Disorder which became Unstable. .......... 2

C. Plaintiff Required Brain Surgery to Control His Seizure Disorder. .......... 3

D. NSHS requested evidence of a period of seizure-free stability. .......... 3

E. Norfolk Southern electricians are required to climb on top of locomotives. .......... 4

F. NSHS could not clear Plaintiff to work at heights in July 2017. .......... 4

G. Plaintiff returned to work on February 1, 2018. .......... 5

ARGUMENT .......... 5

II. Legal Standard .......... 5

III. Plaintiff cannot establish a prima facie case of disability discrimination. .......... 6

A. Plaintiff was not a "qualified individual with a disability" due to his inability to meet the fitness for duty standard for his safety-sensitive position. .......... 7

B. Plaintiff was not subjected to an adverse employment action. .......... 11

C. Plaintiff can point to no evidence of pretext. .......... 11

IV. Plaintiff could not be reasonably accommodated. .......... 12

V. Norfolk Southern is entitled to summary judgment at least for the period while Plaintiff could not be certified to work in a safety-sensitive position. .......... 14

VI. Norfolk Southern is entitled to summary judgment at least for the period that Plaintiff claimed "Total Disability" sickness benefits. .......... 15

CONCLUSION .......... 16

CERTIFICATE OF SERVICE .......... 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)....6, 11

*Anderson v. Norfolk Southern.*,
2021 WL 1214622 ....9, 11, 14

*Anderson v. Norfolk Southern Railway Company*,
No. 21-1735, 2022 WL 1073581 (3d Cir. Feb. 11, 2022) ....7, 10, 11

*Armstrong v. Burdette Tomlin Mem'l Hosp.*,
438 F.3d 240 (3d Cir. 2006)....12

*Capps v. Mondelez Glob., LLC*,
847 F.3d 144 (3d Cir. 2017)....12

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)....6

*Colwell v. Rite Aid Corp.*,
602 F.3d 495 (3d Cir. 2010)....13

*Conneen v. MBNA Am. Bank, N.A.*,
334 F.3d 318 (3d Cir. 2003)....14

*Donahue v. Consol. Rail Corp.*,
224 F.3d 226 (3d Cir. 2000)....8, 9, 10

*Drozdowski v. Northland Lincoln Mercury*,
321 F. Appx. 181 (3d Cir. 2009)....13

*E.E.O.C. v. Schneider Nat., Inc.*,
481 F.3d 507 (7th Cir. 2007) ....10

*Eshleman v. Patrick Indus.*,
961 F.3d 242 (3d Cir. 2020)....7

*Fuentes v. Perskie*,
32 F.3d 759 (3d Cir. 1994)....12

*Garcia v. Vertical Screen*,
592 F. Supp. 3d 409 (E.D. Pa. 2022) ....12

*Grosso v. UPMC*,
857 F. Supp. 2d 517 (W.D. Pa. 2012)....................13

*Holbrook v. City of Alpharetta*,
911 F. Supp. 1524 (N.D. Ga. 1995)....................14

*Kaucher v. Cnty. of Bucks*,
455 F.3d 418 (3d Cir. 2006)....................6

*McCall v. City of Phila.*,
Civil Action No. 11-5689, 2013 WL 5823873 (E.D. Pa. Oct. 29, 2013)....................13

*McDonnell Douglas Corp. v. Green*,
411 U.S. 792 (1973)....................11

*McKenna v. City of Phila.*,
636 F. Supp. 2d 446 (E.D. Pa. 2009)....................15

*Murphy v. United Parcel Serv., Inc.*,
946 F. Supp. 872 (D.C. Kan.1996)....................14

*Snyder v. Norfolk S. Ry. Co.*,
463 F. Supp. 2d 528 (E.D. Pa. 2006), aff'd 271 Fed. Appx. 150 (3d Cir. 2006)....................11

*St. Mary's Honor Ctr. v. Hicks*,
509 U.S. 502 (1993)....................12

*Sulima v. Tobyhanna Army Depot*,
602 F.3d 177 (3rd Cir. 2010)....................6, 7

*Taylor v. Phoenixville Sch. Dist.*,
184 F.3d 296 (3d Cir. 1999)....................6, 13

*Wurzel v. Whirlpool Corp.*,
No. 3:09-CV-498, 2010 WL 1495197 (N.D. Ohio Apr. 14, 2010), *aff'd*, 482 F. App'x 1 (6th Cir. 2012)....................9

**Statutes**

43 Pa. C.S. § 954....................7

29 U.S.C. § 794....................7

42 U.S.C. § 12111(8)....................7

42 U.S.C. § 12111(s)....................7

42 U.S.C. § 12112(a)....................7

ADA .................... *passim*

Public Law .................... 15

Railway Labor Act .................... 15

**Rules**

Fed. R. Civ. P. 56(c) .................... 5

**Other Authorities**

29 CFR § 1630.2 .................... 8

49 CFR § 209.301 .................... 7

## INTRODUCTION

Norfolk Southern is charged with operating a safe railroad by the Federal Railroad Administration ("FRA"). This includes certifying that all employees occupying "safety-sensitive" positions are able to safely perform safety-sensitive functions. Plaintiff Christopher Snyder, an electrician performing electrical work on locomotive engines, has suffered from a seizure disorder since 2005 that became uncontrolled in March 2016 when he suffered a series of seizures from an undetermined cause. Norfolk Southern, via Norfolk Southern Health Services ("NSHS"), discharged its duty under FRA regulations by carefully considering Plaintiff's medical records, his subsequent treatment (including brain surgery), and his risk of harm posed by his potential for recurrence of seizures despite his surgery and medication. One year after his brain surgery, during which Plaintiff demonstrated compliance with his medication regimen and showed that the treatment sufficiently controlled his seizure disorder, he returned to work at Norfolk Southern. Plaintiff now claims he was discriminated against on the basis of his disability and that Norfolk Southern was not entitled to ensure he could work safely. Because the record shows no dispute of material fact that Norfolk Southern was entitled to make the decisions it did concerning Plaintiff's fitness for duty, summary judgment must be granted.

## STATEMENT OF UNDISPUTED FACTS

### *A. Plaintiff is employed in a safety-sensitive position.*

Plaintiff is employed as an electrician performing electrical work on locomotive engines in the Juniata Locomotive Shop in Altoona, Pennsylvania. Juniata Locomotive Shop is one of the largest facilities for locomotive repair in the industry. The complex is situated across 70 acres, with approximately 30 acres under roof. The dedicated team at Juniata is responsible for supporting the quality and longevity of Norfolk Southern's locomotive fleet. In the Juniata

Locomotive Shop an electrician performs the electrical work on locomotive engines including electrical diagnostics rebuild and repair. Electricians work on high voltage locomotive engines and are tasked with climbing in, on and off 10-15-foot-high locomotives, on occasion outside the shop in inclement weather conditions. Because locomotive shop electricians "inspect, repair or maintain, locomotives," this position is a safety-sensitive position under the FRA due to the potential risk of harm to the employee, workers in other trades, and the public if the employee is unable to perform the required work safely.

### *B. Plaintiff suffered from a long-term seizure disorder which became unstable.*

Plaintiff worked as a Norfolk Southern electrician for a decade with medication-controlled seizure disorder until March 2016, when he suffered from a series of seizures that only stopped when he was placed in an induced coma. Concise Statement of Material Facts ("CSMF") ¶¶ 16-22. In addition to the seizures, he had experienced periods of "fogginess," "momentary mental slowness," "confusion," "slowed mentation," and "weakness." CSMF ¶ 20. After evaluating Plaintiff's condition for several months, his physicians determined he needed surgery to remove two of at least five "cavernous malformations" that may have been triggering his seizures. CSMF ¶ 31.

Norfolk Southern was first made aware that Plaintiff suffered from a seizure disorder when he was hospitalized in March 2016. CSMF ¶ 18, 22, 23. Because of his condition, NSHS told Plaintiff he was not fit for service in his safety-sensitive position as a locomotive electrician and needed to provide additional information from his medical providers so that NSHS could determine his fitness for service—specifically requesting that his doctors assess his risk of experiencing a recurrent seizure within the next year. CSMF ¶ 23. NSHS followed up three

months later again asking Plaintiff to provide information about his treatment so NSHS could evaluate his fitness upon his condition improving. CSMF ¶ 24.

***C. Plaintiff required brain surgery to control his seizure disorder.***

After significant evaluation, Plaintiff's physicians could not determine the exact cause of Plaintiff's seizures, but decided he should have surgery to remove two of the at least five "cavernous malformations" that were present in Plaintiff's brain based on his MRI scan. CSMF ¶ 31. On January 24, 2017, Dr. Mark Richardson, a neurosurgeon with the Brain Modulation Lab at the University of Pittsburgh, performed brain surgery on the Plaintiff removing two cavernous angiomas (tumors) from his brain. CSMF ¶ 32. In a post-operative evaluation on February 8, 2017, Dr. Richardson recommended that Plaintiff continue his medication regimen of Depakote and Keppra. CSMF ¶ 33. The post-operative notes stated that Plaintiff could return to work in two months "from a surgical standpoint," but not without Plaintiff first consulting with his treating neurologist and epileptologist. *Id.* The post-operative notes also stated Plaintiff would need to undergo an MRI of his brain at UPMC Presbyterian Hospital in about one year. CSMF ¶ 35.

***D. NSHS requested evidence of a period of seizure-free stability.***

To demonstrate Plaintiff's fitness to return to his safety-sensitive position, NSHS requested that he provide documentation from his treatment providers to show that he remained seizure-free for six-months after surgery while on a stable regimen of medication. CSMF ¶ 40-42. Plaintiff's treating neurologists had tapered him off Depakote as of March 29, 2017, but determined that Plaintiff would continue to require "lifetime" seizure-control medication. CSMF ¶ 36. He continues to take Keppra. *Id.*

After reviewing Plaintiff's medical records through July 3, 2017, the essential functions of Plaintiff's safety-sensitive position, and all reasonable accommodations, NSHS determined

Plaintiff was not **currently** fit to return to service because his condition necessitated some ongoing restrictions to limit the risks associated with his seizure disorder. CSMF ¶¶ 43-47.

***E. Norfolk Southern electricians are required to climb on top of locomotives.***

NSHS consulted with Plaintiff's supervisor concerning his essential job functions and together they determined that Plaintiff could be reasonably accommodated concerning the restriction on operating the locomotives. CSMF ¶ 47. However, there was no way to limit the requirement for Plaintiff to work at heights or otherwise safeguard him and others during the times he needed to do so. CSMF ¶¶ 8, 13-15, 46.

Electricians working in the Juniata Locomotive Shop are required to work from heights in order to perform the essential functions of their job. CSMF ¶¶ 8, 13-15. They are constantly climbing on top of locomotives—10 to 15 feet high—to work on the high voltage locomotive engines. *Id*. When working from heights in the Juniata Locomotive Shop, electricians cannot always use fall protection. harnesses because the locomotive engines are frequently in areas where there are no overhead attachment points to which a fall protection harness could be properly anchored. *Id.* Norfolk Southern electricians must be able to climb to the top of the locomotives in all weather conditions without the aid of harnesses. *Id.* Because there is no way to limit this job duty or guarantee fall-protection, a restriction on an electrician's ability to safely work at heights cannot be accommodated. CSMF ¶¶ 8, 13-15, 46.

***F. NSHS could not clear Plaintiff to work at heights in July 2017.***

Given the significant brain surgery Plaintiff had undergone (which only removed two of "multiple" cavernous malformations present in his brain), the subsequent adjustment of his seizure-control medication, and Dr. Richardson's opinion that Plaintiff should have a follow-up MRI one year after his surgery, NSHS determined that Plaintiff could likely be cleared to work at

heights if he remained seizure-free for one year after his surgery while on his stable seizure-control medication regimen. CSMF ¶¶ 31-36, 43-46.

### *G. Plaintiff returned to work on February 1, 2018.*

On January 9, 2018, NSHS received follow up documentation from Plaintiff's medical providers to determine that he had not experienced recurrence of seizures for a year after his surgery while on a stable medication regimen. CSMF ¶ 54. This enabled NSHS to certify Plaintiff's fitness to work in his safety-sensitive position with only the ongoing restriction that he not operate locomotives—for which Norfolk Southern could provide reasonable accommodation. CSMF ¶ 55. Thus, Plaintiff returned to work as of February 1, 2018. CSMF ¶ 56.

For all periods while he could not meet the fitness for service qualifications, Plaintiff received sickness benefits or, after his entitlement to sickness benefits was exhausted, unemployment benefits from the Railroad Retirement Board. CSMF ¶¶ 63-64. He was never terminated from his position and his health insurance benefits continued during his entire absence from work. CSMF ¶ 66. Plaintiff claimed sickness benefits due to "Total Disability" until April 2017 when he was notified that those benefits were exhausted. CSMF ¶ 64. He did not seek to return to work before April 13, 2017. CSMF ¶ 65.

At all times, Norfolk Southern made its Vocational Rehabilitation Services (VRS) program available to Plaintiff and encouraged him to utilize it to find other vacant positions at Norfolk Southern that either did not require a safety-sensitive certification or in which Plaintiff could be reasonably accommodated with his restrictions following his brain surgery. CSMF ¶¶ 26-27, 48-15. Plaintiff never contacted the VRS program, never sought other employment, and did not seek to return to work at Norfolk Southern in any other capacity than as an electrician. *Id*.

## ARGUMENT

### I. Legal Standard

A motion for summary judgment must be granted if the evidence shows that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue of material fact is "genuine" if there is a sufficient evidentiary basis on which a reasonable jury could return a verdict for the nonmoving party. *Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is "material" if it might affect the outcome of the case under governing law. *Id.* (*citing Anderson*, 477 U.S. at 248). A defendant is entitled to summary judgment if the plaintiff fails to establish the existence of an element essential to his claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (If the nonmovant fails to make a sufficient showing on even one element of his case, it "necessarily renders all other facts immaterial").

**II. Plaintiff cannot establish a prima facie case of disability discrimination.**

"To establish a prima facie case of discrimination" in violation of the ADA, "a plaintiff must show (1) he is disabled within the meaning of the ADA, (2) that he is otherwise qualified for the job, with or without reasonable accommodations, and (3) that he was subjected to an adverse employment decision as a result of discrimination." *Sulima v. Tobyhanna Army Depot*, 602 F.3d 177, 185 (3rd Cir. 2010) (*citing Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 306 (3d Cir. 1999)).

Plaintiff's claim of disability discrimination fails because there is no record evidence showing Plaintiff was otherwise qualified for the safety-sensitive position of locomotive electrician in the Juniata Locomotive Shop because his seizure disorder posed a direct threat to himself and others; there is no record evidence showing Plaintiff was subjected to an adverse employment action as a result of discrimination; and even if he could establish a prima facie case of disability discrimination for either of these periods, there is no evidence of pretext to cast doubt on Norfolk Southern's legitimate non-discriminatory reason to extend Plaintiff's health-related

absence until he could be found fit for service in his safety-sensitive position with reasonable accommodation.

### ***A. Plaintiff was not a "qualified individual with a disability" due to his inability to meet the fitness for duty standard for his safety-sensitive position.***

There is no record evidence showing Plaintiff was otherwise qualified for the safety-sensitive position of locomotive electrician because his seizure disorder posed a direct threat to himself and others. Under the ADA, a "qualified individual with a disability" means "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8); s*ee also Eshleman v. Patrick Indus.*, 961 F.3d 242, 245 (3d Cir. 2020); *Sulima v. Tobyhanna Army Depot*, 602 F.3d 177, 185 (3d Cir. 2010); 42 U.S.C. § 12112(a); 29 U.S.C. § 794; 43 Pa. C.S. § 954. Each employer is entitled to determine the essential functions of the job for which it is hiring, and an employer's determination of the essential functions of the job position is entitled to deference. *See* 42 U.S.C. § 12111(8) ("[C]onsideration shall be given to the employer's judgment as to what functions of a job are essential").

Norfolk Southern, as required by the FRA, is also obligated to operate the railroad as safely as possible to prevent potential catastrophic harm to its employees and the general public. 49 CFR § 209.301; *Cf. Anderson v. Norfolk Southern Railway Company*, No. 21-1735, 2022 WL 1073581 (3d Cir. Feb. 11, 2022) ("Unsurprisingly" the FRA considers certain railroad positions to be "safety-sensitive" because performance in those positions implicate the safety of both the public and fellow railway workers). Norfolk Southern's obligations under the FRA to determine the fitness for duty of any employee occupying a safety-sensitive position requires a similar analysis to that which any employer may undertake to determine whether an employee poses a "direct

threat" to himself or others in his occupation. 42 U.S.C. § 12111(s) (a "direct threat" is a "significant risk" to health or safety that cannot be eliminated by reasonable accommodation).

To determine that an employee cannot be reasonably accommodated due to a "direct threat," an employer must consider (1) the duration of the risk; (2) the nature and severity of the potential harm; (3) the likelihood that the potential harm will occur; and (4) the imminence of the potential harm. 29 CFR § 1630.2 (EEOC Regulations). Dr. Litow and NSHS carefully reviewed Plaintiff's medical records and referenced other guidance on his seizure disorder to determine the duration of his elevated risk of recurring seizures. CSMF ¶¶ 31-36, 43-46. As the entity charged with ensuring that all employees of Norfolk Southern are able to safely perform their duties, the other factors are well known to NSHS: the nature and severity of potential harm when working on, around, or with locomotives is catastrophic. *See e.g. Donahue v. Consol. Rail Corp.*, 224 F.3d 226, 231 (3d Cir. 2000) ("[W]hen an employee's disability potentially creates a risk of death for others, some courts have found that almost any risk is 'significant'").

In *Donahue*, the Court of Appeals held that the four-factor analysis of the direct threat defense is appropriately addressed at summary judgment. *Donahue*, 224 F.3d 226 at 231 (upholding summary judgment in favor of the employer, the Third Circuit ruled "[i]n disability discrimination cases, courts must evaluate the significance of the risk that an employee would pose by considering four interrelated factors: the nature of the risk, the duration of the risk, the severity of the risk, and the probability that the potential harm will occur"). The Court of Appeals upheld the district court's dismissal of the Plaintiff's disability discrimination claim because it was "clear" that employing an individual as a train dispatcher who was at risk of losing consciousness on the job was a "significant risk to others." 224 F.3d at 231 ("[i]f a train dispatcher passes out on the job, railroad employees and others could be injured or killed").

Similar to the facts in *Donahue*, Plaintiff's seizure condition could cause a sudden unexpected immobilization or loss of consciousness. The risk of harm to Plaintiff, other employees, and the public is sufficiently "grievous" to create a "significant risk to the health or safety of others that cannot be eliminated by reasonable accommodation" so as to constitute a direct threat under the ADA. *Id.* The duration of risk depends on "the longevity of the underlying condition, not the actual or relative brevity of its sporadic consequences, and the danger that those consequences pose while they are manifest." *Wurzel v. Whirlpool Corp.*, No. 3:09-CV-498, 2010 WL 1495197, at *8 (N.D. Ohio Apr. 14, 2010), *aff'd*, 482 F. App'x 1 (6th Cir. 2012); *see also Anderson v. Norfolk Southern.*, 2021 WL 1214622, at *6 (adopting the analysis in *Wurzel*).

Calculation of potential harm "is not subject to scientific measurement. Likelihood is not the same as certainty." *Anderson*, 2021 WL 1214622, at *7 (quoting Wurzel, 2010 WL 1495197, at *8). In assessing potential harm, the court must look at the circumstances known to the employer—in this case, an employer charged by the FRA with constantly evaluating whether its employees can operate the railroad safely. As to the fourth fact, the "imminence of potential harm," risk of harm is deemed to be "imminent" when the plaintiff's condition makes it sufficiently likely to occur "at any given moment." *Anderson*, 2021 WL 1214622, at *7 (quoting *Wurzel*, 2010 WL 1495197, at *8; *see also Donahue*, 224 F.3d at 232 (stating the court "must consider the evidence available when [the employer] made [the] decision, **not what is known with the benefit of hindsight**." When the employer made its decision, it knew that the plaintiff's own cardiologist had opined that plaintiff was at risk of passing out unexpectedly.) (emph. added).

NSHS properly evaluated the risk that Plaintiff may suffer a recurrence of seizure or the other symptoms associated with his seizure disorder: "fogginess," "momentary mental slowness," "confusion," "slowed mentation," and "weakness." CSMF ¶ 20. NSHS had a duty to ensure 1)

that Plaintiff's seizure disorder could be controlled for a sufficient period of time with medication and 2) that Plaintiff would demonstrate compliance with his medication treatment in order to certify his fitness for duty. A six-month period was found to be enough to mitigate the risk of recurrence with the restrictions that Plaintiff not work from heights and not operate locomotives. Although one of those restrictions could be reasonably accommodated, there was no way for Norfolk Southern to ensure that Plaintiff never had to climb on top of a locomotive in a situation where fall protection could not be used. Plaintiff admits his job required climbing on top of locomotives to work on the high voltage engines and fan components—he can point to no dispute of material fact to show otherwise.

Given that Plaintiff could not be reasonably accommodated, NSHS determined that if Plaintiff's medical records could establish his seizures were controlled sufficiently by a stable medication regimen for a year, it could remove the restriction that he not work from heights—in other words, NSHS properly considered the duration of the risk and evaluated whether accommodating Plaintiff would continue to present a direct threat after his seizure disorder was stable for one year. Under these circumstances, Plaintiff cannot point to any dispute of material fact to cast doubt on NSHS's evaluation of his fitness for duty. The ADA does not permit a jury to determine the safety standards of Norfolk Southern. *See e.g. Anderson v. Norfolk Southern*, 2022 WL 1073581 at *3, ("the employer is entitled to determine how much risk is too great for it to be willing to take") (quoting *E.E.O.C. v. Schneider Nat., Inc.*, 481 F.3d 507, 510 (7th Cir. 2007).

In *Donahue*, the Court of Appelas found that "no reasonable jury could fail to find that the evidence in the summary judgment record established that employing [plaintiff] as a train **dispatcher** would have presented a significant risk to others." 224 F.3d at 230–231 (emphasis added). Where the sudden unexpected incapacitation of a dispatcher, working in an office setting

with no proximity to moving equipment, poses a significant risk to others, the risk of an electrician's incapacitation while working on 600-volt electrical components more than fifteen feet above the ground, similarly poses such a risk.

### *B. Plaintiff was not subjected to an adverse employment action.*

No evidence exists that shows Plaintiff was subjected to an adverse employment action as a result of discrimination when he was withheld from service pending NSHS' determination that he was fit for duty after brain surgery. While the ADA prohibits discrimination based on stereotypes (i.e., adverse action based on an employee's disabling, or potentially disabling condition), it does not prohibit an employer from acting when an employee's condition leads to harm or a risk of harm. *See Anderson v. Norfolk Southern Railway Company*, 2021 WL 1214622 at *8 (W.D. Pa. Mar. 31, 2021) (aff'd by 2022 WL 1073581). In *Anderson*, the District Court found that Norfolk Southern had not subjected Anderson to an adverse employment decision by finding him medically unfit for the positions of Engineer and Conductor based on the risk that his heart condition could lead, and in several episodes had led, to sudden loss of consciousness. *Id*. Courts within the Third Circuit have consistently found that in circumstances in which Norfolk Southern was aware of the risks of an employee's health condition, the decision to find an employee medically unfit for his position is not an adverse employment action. *Snyder v. Norfolk S. Ry. Co.*, 463 F. Supp. 2d 528 (E.D. Pa. 2006), aff'd 271 Fed. Appx. 150 (3d Cir. 2006).

### *C. Plaintiff can point to no evidence of pretext.*

Even if Plaintiff could establish a prima facie case of disability discrimination, which he cannot, his claim nonetheless fails because there is no evidence that the decision to withhold Plaintiff from service until he could be found fit for duty was pretext for discrimination.

"Claims of pretextual employment discrimination under the ADA follow the familiar burden-shifting paradigm outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, (1973)."

The "ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Garcia v. Vertical Screen*, 592 F. Supp. 3d 409, 419 (E.D. Pa. 2022) (*quoting St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 518 (1993)). An adverse employment action can be demonstrated to be pretextual "by either (i) discrediting the proffered reasons, either circumstantially or directly, or (ii) adducing evidence, whether circumstantial or direct, that discrimination was more likely than not a motivating or determinative cause of the adverse employment action." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994).

There are no record facts demonstrating that requesting additional medical information necessary to determine if Plaintiff's seizure disorder had been effectively controlled following his March 2016 recurrence of seizures and January 24, 2017 brain surgery was pretext for discrimination. Plaintiff cannot point to any material fact that discredits Norfolk Southern's legitimate non-discriminatory decision to not certify him as fit for service until his medical records could establish that the brain surgery and medication regimen had sufficiently controlled his seizure disorder to reduce the risk it posed.

### III. Plaintiff could not be reasonably accommodated.

Similarly, Plaintiff cannot establish a prima facie failure to accommodate claim because he admits he never requested an accommodation. In order to establish a prima facie case of failure to accommodate under the ADA, a plaintiff must show that "(1) he was disabled and his employer knew it; (2) he requested an accommodation or assistance; (3) his employer did not make a good faith effort to assist; and (4) he could have been reasonably accommodated." *Capps v. Mondelez Glob., LLC*, 847 F.3d 144, 157 (3d Cir. 2017) (quoting *Armstrong v. Burdette Tomlin Mem'l Hosp.*, 438 F.3d 240, 246 (3d Cir. 2006)). Plaintiff admits he never requested an accommodation—he only wanted to be returned to work without any limitation. CSMF ¶ 52.

"[W]hen accommodations are at issue in an ADA claim, the burden is on the employee or

a representative to inform the employer of both the disability and desire for an accommodation." *Drozdowski v. Northland Lincoln Mercury*, 321 F. Appx. 181, 185 (3d Cir. 2009). "Either by direct communication or other appropriate means, the employee must make clear that [he] wants assistance for his ... disability." *Colwell v. Rite Aid Corp*., 602 F.3d 495, 506 (3d Cir. 2010). Although the law does not require "a set of 'magic words,' the plaintiff must make clear that [he] wants assistance." *McCall v. City of Phila*., Civil Action No. 11-5689, 2013 WL 5823873, at *24 (E.D. Pa. Oct. 29, 2013). Importantly, an "employer cannot be faulted if the employee's actions or omissions during the interactive process cause the process's failure[.]" *Colwell*, 602 F.3d at 507 *(quoting Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 317 (3d Cir. 1999). Here, Plaintiff only requested that he be returned to work—without any restriction—after April 13, 2017 when his entitlement to sickness benefits was exhausted. He could not be certified as fit for duty at that time. When he could be found fit for duty, with restrictions, NSHS and Plaintiff's supervisor considered whether his restrictions could be accommodated and found that he could not be accommodated for the restriction that he not work at heights. Plaintiff was informed of this inability to accommodate him and submitted nothing in response to suggest an alternative accommodation that would allow him to work—in fact none existed. Even the standard "fall-protection" safeguards commonly used when employees need to work from heights cannot always be guaranteed to Norfolk Southern electricians who may be required to climb to the top of a locomotive in all weather conditions to perform repairs.

Plaintiff may argue he could have been excused from performing electrician duties when fall-protection could not be used. However, having other employes perform some of the functions which cannot be performed by the disabled employee is not a reasonable accommodation. *Grosso v. UPMC*, 857 F. Supp. 2d 517, 539–40 (W.D. Pa. 2012) ("Having other personnel perform some

of the functions of the disabled employee is unreasonable and not required under the ADA") (citing *Murphy v. United Parcel Serv., Inc.*, 946 F. Supp. 872, 872, 882–83 (D.C. Kan.1996) (holding that because driving was an essential job function of a truck mechanic required to take road service calls, the employer did not have to provide another mechanic to accompany the plaintiff mechanic, who suffered from a blood pressure disability, to drive); *Holbrook v. City of Alpharetta*, 911 F. Supp. 1524, 1536–37 (N.D. Ga. 1995) (holding a city department was not obligated to hire a second detective to accompany the plaintiff detective who suffered from diabetic retinopathy, a severe visual impairment, to crime scenes for evidence collection).

Norfolk Southern also fulfilled any possible obligation to accommodate Plaintiff during the period he could not be certified as fit for service to work as an electrician by offering the services of its VRS program. The Court of Appeals has held that "both parties have a duty to assist in the search for an appropriate accommodation and to act in good faith." *Conneen v. MBNA Am. Bank, N.A.*, 334 F.3d 318, 330 (3d Cir. 2003) (internal quotation omitted). Here, Norfolk Southern met its obligation but Plaintiff refused these services. Plaintiff was referred to the VRS program multiple times while NSHS continued to evaluate his medical records and his ability to return as an electrician. Plaintiff admitted that he did not contact the VRS program and did not seek any other position. CSMF ¶¶ 26-27, 48-15. Plaintiff's refusal to accept Norfolk Southern's offer to enlist the VRS program was a refusal to participate in an interactive process to find a suitable accommodation. There is no genuine dispute of material fact as to Norfolk Southern's good faith effort to assist Plaintiff. Therefore, Plaintiff's failure to accommodate claim fails and Norfolk Southern is entitled to summary judgment. *See Anderson*, 2021 WL 1214622, at *8-10.

## IV. Norfolk Southern is entitled to summary judgment at least for the period while Plaintiff could not be certified to work in a safety-sensitive position.

Plaintiff's claims are appropriately divided into two separate periods: between January 24, 2017 to July 17, 2017 (the time period during which NSHS could not certify Plaintiff's fitness for duty as a locomotive electrician), and between July 17, 2017 and January 15, 2018[1] (the time period during which NSHS could certify Plaintiff's fitness, but only with restrictions on his operation of locomotives and on working from heights that could not be reasonably accommodated). Should the Court find that some question of fact exists as to whether Plaintiff could have been reasonably accommodated to work at heights after July 17, 2017, summary judgment must be granted as to all periods that preceded July 17, 2017. Prior to July 17, 2017, Plaintiff could not be found fit for service and was not entitled to any accommodation.

### V. Norfolk Southern is entitled to summary judgment at least for the period that Plaintiff claimed "Total Disability" sickness benefits.

Plaintiff is not entitled to back pay or front pay damages for the time he claimed sickness benefits due to "Total Disability" from the Railroad Retirement Board ("RRB"). Plaintiff claimed those benefits until April 5, 2017 when he was told those benefits were exhausted. CSMF ¶ 64. Further, he did not seek to return to work in any way until April 13, 2017, when he told NSHS he wanted to return because his sickness benefits had been exhausted. CSMF ¶ 65. Thus, Plaintiff was solely responsible for any wage loss he claims from January 24, 2017 (the date of his brain surgery) until April 13, 2017. Generally, employers are not responsible for wage loss during an employee's period of disability. *See McKenna v. City of Phila.*, 636 F. Supp. 2d 446, 465 (E.D.

1 Plaintiff returned to work on February 1, 2018, however on February 18, 2018, the IBEW submitted a grievance on Plaintiff's behalf seeking the recovery of lost pay from December 1, 2017 to January 31, 2018. The grievance was adjudicated by the Public Law Board ("PLB"), the grievance arbitration tribunal formed by the National Mediation Board to resolve minor disputes between an individual railroad and union covered under the Railway Labor Act, which found that the delay between Dr. Clark's January 9, 2018, letter to NSHS and Plaintiff's return to service on February 1, 2018, was unreasonable and decided to award Plaintiff his lost earning from January 15, 2018, to February 1, 2018. Having already recovered compensation for lost earnings om January 15, 2018, to February 1, 2018, Plaintiff's claim to such lost earning terminates on January 15, 2018.

Pa. 2009) ("A plaintiff should not be able to receive back pay for a period when he was unable to work for reasons unrelated to the defendant's conduct"). For the same reason, Norfolk Southern is entitled to summary judgment for his claim for lost health insurance benefits because Plaintiff admits he never lost any health insurance benefits to which he was entitled. CSMF ¶ 66.

## CONCLUSION

For the foregoing reasons, Norfolk Southern respectfully requests this Honorable Court grant its Motion for Summary Judgment and dismiss Plaintiff's Complaint in its entirety with prejudice.

Respectfully submitted,

Date: April 15, 2024

**BUCHANAN INGERSOLL & ROONEY, PC**

BY: */s/ Kathleen Jones Goldman*
Kathleen Jones Goldman
PA ID No. 90380
Carl Misitano
PA ID No. 329904
501 Grant Street, Suite 200
Pittsburgh, PA 15219
Phone: (412) 562-8800
Fax: (412) 562-1014
kathleen.goldman@bipc.com
carl.misitano@bipc.com

*Counsel for Norfolk Southern Railway Company*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 15th day of April, 2024, I electronically filed the foregoing Memorandum of Law in Support of Defendant's Motion for Summary Judgment with the Clerk of the Court using the CM/ECF system, causing electronic service on all counsel of record.

*/s/ Kathleen Jones Goldman*
Kathleen Jones Goldman

*Counsel for Norfolk Southern Railway Company*