IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CHRISTOPHER SNYDER,

Plaintiff,

v.

NORFOLK SOUTHERN RAILWAY CO.,

Defendants.

23cv0059
ELECTRONICALLY FILED

**MEMORANDUM ORDER ON THE PARTIES' MOTIONS IN LIMINE**

Before the Court are several motions in limine filed by Plaintiff at ECF 83. Defendant filed a response to Plantiff's motions at ECF 111. Also before the Court are Defendant's motions in limine filed at ECF 84, ECF 86, ECF 88, ECF 90, ECF 92, and ECF 94. Plaintiff filed an omnibus response to Defendant's motions at ECF 110. The jury trial in this matter is set to commence tomorrow, on September 2, 2026, with jury selection starting at 9:30 a.m. and the trial will begin immediately thereafter.

All of these matters are now ripe, and the Court's Memorandum Order will address all of these motions below, seriatim.

**I. Background**

Plaintiff, Christopher Snyder, has brought this action against Defendant, Norfolk Southern Railway, Co., alleging that Defendant violated the Americans with Disabilities Act ("ADA"). Specifically, Plaintiff alleges that his employer, Defendant, unlawfully prohibited him from returning to work due to a medical condition. Plaintiff contends that his medical condition did not prevent him from performing his job duties and that precluding him from work violated the ADA. The Defendant denies Plaintiff's ADA claim and alleges Defendant could not

medically clear Plaintiff to return to work because, in the interest of safety, returning him imposed a significant risk of substantial harm to himself and others in the workplace, and no accommodation was available that would enable him to conduct the essential functions of his job during that period of time.

## II. Analysis

### A. Plaintiff's Motions (ECF 83)

#### 1. Motion to exclude Defendant's witness, Jennifer Bailey, from trial

Plaintiff argues that Jennifer Bailey, director of mechanical operations for Defendant, who Defendant proffered on its witness list as its corporate representative, should not be permitted to testify at trial. Plaintiff asserts that Bailey has no first-hand knowledge concerning Defendant's reasons for refusing to allow Plaintiff to return to work. ECF 83, p. 2. In addition, Plaintiff notes that Defendant failed to identify Bailey in its initial and first amended Rule 26 disclosures as a person who might possess information to support its defenses. Id. Claiming that Defendant's failure to disclose Bailey is not substantially justified or harmless under Rule 37(c)(1), Plaintiff further argues that Bailey's designation as a corporate representative still subjects her to Federal Evidence Rules 602, 701, and 802, and thus, suggests she should be barred from testifying.

Defendant counters that the extreme sanction of excluding Bailey's testimony under Fed. R. Civ. P. 37(c)(1) is not justified. Defendant explains that Plaintiff will not be prejudiced, its late disclosure is substantially justified, and there is no bad faith on the part of Defendant. Defendant argues that in January of 2026, when Defendant sent Plaintiff its [first] Amended Rule 26 Disclosures (following the close of discovery), it identified Ryan Stege as the person who could testify on matters that Ernest McClellan had previously testified via a discovery

deposition, noting that McClellan had retired. Defendant claims that in response to its [first] Amended Rule 26 Disclosures, "Plaintiff objected to Mr. Stege's disclosure and repeatedly declined offers to make him available for deposition, on February 10, 2026, and May 10, 2026, in an attempt to cure any potential prejudice over the course of over seven months." ECF 111, p. 2. Defendant claims that Stege was fully prepared to testify at trial but when the trial was rescheduled to begin tomorrow (September 2, 2026), Defendant "learned that Mr. Stege would be out of the country during the new trial date and immediately disclosed Jennifer Bailey (who reports directly to Mr. Stege) as a replacement witness, on August 18, 20[26], identifying the exact same areas of knowledge as Mr. Stege." Id. In its response to Plaintiff's motion in limine on this matter, Defendant emphasizes that Bailey "has been employed by [Defendant] in a management position at the Juniata locomotive shop since 2017 serving as a supervisor to Plaintiff." Id.

The Court finds that there is no excuse for not identifying Bailey as a potential witness in either its earlier Rule 26 disclosures or at any time prior to her name appearing on Defendant's trial witness list. See ECF 76. The Court notes that Defendant's description of Bailey's testimony set forth in its witness list reads in relevant part as follows:

> [Bailey] will explain the work performed in the Juniata Locomotive Shop, as well as the specific roles and crafts of the workforce performing the comprehensive repairs, rebuilds, overhauls, or upgrades to locomotives and other work in the Juniata Locomotive Shop.
>
> In particular, she is expected to testify regarding the job duties, tasks, and responsibilities of electricians working at the Juniata Locomotive Shop. During her tenure, Ms. Bailey has regularly managed over one-hundred electricians at the Juniata Locomotive Shop, including Plaintiff. Ms. Bailey is expected to testify regarding job requirements and safety risks of the electrician role, including working at heights and with high voltage equipment. She will provide testimony relating to the ability to provide certain accommodations, the essential functions of the electrician position, as well as the role of Norfolk Southern's Vocational Rehabilitation Services.

> Ms. Bailey is also expected to testify as to how electricians are assigned (e.g., job bidding, bumping rights) to certain roles within the Juniata Locomotive Shop, including the impact of the Collective Bargaining Agreement between the International Brotherhood of Electrical Workers (IBEW) and Norfolk Southern.

ECF 76, p. 2-3.

Rule 26 reads in relevant part, "[e]xcept as exempted by Rule 26(a)(1)(B) or as otherwise stipulated or ordered by the court, a party must, without awaiting a discovery request, provide to the other parties . . . the name and, if known, the address and telephone number of each individual likely to have discoverable information--along with the subjects of that information--that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment[.]" Fed. R. Civ. P. 26(a)(1)(A)(i). Rule 26(e) requires that the parties supplement their disclosures throughout the litigation. Furthermore, under Federal Rule of Civil Procedure 37(c)(1), when "a party fails to disclose information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence . . . at trial, unless the failure was substantially justified or harmless." Fed. R. Civ. P. 37(c)(1). In considering whether the exclusion of evidence is an appropriate sanction for failure to comply with discovery duties, the Court considers four factors: (1) the prejudice or surprise of the party against whom the excluded evidence would have been admitted; (2) the ability of the party to cure that prejudice; (3) the extent to which allowing the evidence would disrupt the orderly and efficient trial of the case or other cases in the court; and (4) bad faith or willfulness in failing to comply with a court order or discovery obligation. *Nicholas v. Pennsylvania State Univ.*, 227 F.3d 133, 148 (3d Cir. 2000).

Applying the four-part test here, the Court first finds that Plaintiff would be prejudiced if Defendant were to be allowed to present Bailey as a trial witness. Based on information supplied

by Defendant in its response to this motion and in its witness list, Bailey appears to have been Plaintiff's supervisor since 2017. She does not hold the same position that Ryan Stege (who was identified in January of 2026 as a potential witness, following the retirement of Ernest McClellan) holds.

Although Defendant from its initial disclosure statement generically identified "a representative" with "knowledge regarding [Defendant's health system's] processes and procedures, it never identified Bailey as that person. See 83-1, p.2. Although Plaintiff could have anticipated that someone from Norfolk Southern would provide a job description for an electrician working in the Juniata Shop, and either the same person or a different Norfolk Southern employee would testify that there were no accommodations to the electrician's job that could protect Plaintiff and/or his co-workers at the Juniata Shop if Plaintiff had another seizure while working, the Court finds that Ernest McClellan (who was identified in Defendant's initial disclosures <u>and</u> who was deposed during discovery) was the appropriate person to testify at trial.[1] Defendant never provided the identity(ies) of those persons as required by Rule 26. Plaintiff had no opportunity to depose Bailey during the nearly three years of discovery in this case nor prepare for her testimony at this trial.

Secondly, the Court finds that there is no way to cure that prejudice to Plaintiff. The identification of Bailey first took place on August 18, 2026, vis-à-vis a [second] Amendment to Defendant's Rule 26 Disclosures, just fifteen days before the start of trial and three days prior to Defendant's trial witness list due date.[2] To expect Plaintiff to depose a material fact witness

---

[1] Defendant notes that McClellan retired from Defendant's employ but its response to Plaintiff's motion makes no effort to explain why McClellan is unavailable as a witness during this trial.

[2] Judge Haines, who managed this case before this Court, ordered that all fact discovery be closed on January 8, 2024. ECF 21. This Court accepted the transfer of this case from Judge Haines and the subsequent trial thereof, because of the heavy docket in the Johnston division, so that the Parties would

while preparing for trial is unconscionable especially in light of the fact that this case incepted in 2023.

Third, the only way to cure this matter would be for the Court to postpone the trial and reopen discovery for the limited purpose of deposing Bailey and obtaining any records, documents or the like she possesses that relate to Plaintiff, Plaintiff's job, and the basis for Bailey's position concerning what accommodations – if any – would need to be made to enable Plaintiff to return to work safely earlier than he did. As noted, this case was file on April 4, 2023, and is over three years old. The Court has no intention of prolonging an already drawn-out matter and under Rule 1, has an obligation to ensure the "just, speedy, and inexpensive determination" of this proceeding. Pa. R. Civ. P. 1. In addition, the Court's own calendar will not accommodate the scheduling of another jury trial until well into 2027.

As to the fourth element, this Court was only recently reassigned to serve as the trial court in this matter. Thus, this Court has issued no Court Orders with which Defendant failed to comply. However, the Court is utterly stymied as to how Defendant could have failed to comply with its Rule 26 obligation to specifically identify Bailey as the person who would be best able to describe the nature of Plaintiff's job duties and/or explain how Plaintiff's health condition could pose a risk to himself and other co-workers given his job duties. As noted by Defendant in its witness disclosures, Bailey worked for Defendant since 2017, and she regularly managed over 100 electricians (including Plaintiff) at the Juniata shop. ECF 76, p. 3. Although Plaintiff was aware of Bailey's existence and her role as a manager of electricians – himself included – Plaintiff did not know that Bailey would be the spokeswoman for Defendant on the issues pertaining to his job duties, the specific safety risks his health condition could pose to himself

---

receive a promptly scheduled trial in this three-year-old case.

and others while performing those duties, Defendant's ability (or inability) to provide certain accommodations given Plaintiff's health condition, and the role of Defendant's vocational rehabilitation services. ECF 76, p. 3.

Moreover, when Defendant's initial Rule 26 disclosures were filed, Plaintiff took the deposition of Ernest McClellan – who was identified as having "knowledge regarding [Plaintiff's] job duties, tasks, and responsibilities." ECF 83-1, p. 2. The Court is aware (from other motions filed in this matter), that McClellan was deposed during discovery, and has since retired from Norfolk Southern. When McClellan retired, Ryan Stege – presumably McClellan's replacement -- was proffered by Defendant (in January of 2026) and was placed on Defendant's [first] Amended Rule 26 Disclosure. ECF 83-2, p. 3. Defendant claims that although discovery had closed, its offer to permit Plaintiff to depose Stege at that time (following his identification in January of 2026) and Plaintiff's refusal to do so somehow renders Plaintiff responsible for not taking action to discover what Stege knew, and thus, what Bailey (as Stege's direct employee) might know.

In short, it appears to this Court that McClellan, who was identified in a timely fashion by Defendant and who was deposed during discovery, had first-hand knowledge of the very topics to which Defendant now wants Bailey to testify. Because the Defendant provides no reason as to why McClellan cannot provide live testimony at trial either in its response to this motion, nor in its motion that McClellan testify via a deposition, the Court finds that Defendant's attempt to substitute Bailey, a current employee, for McClellan, a retired employee is both willful and in violation of its discovery obligations.

Finally, during the pretrial conference held on September 1, 2026, the day before the commencement of trial, counsel for Defendant indicated that Ernest McClellan recently became

available for trial and agreed to attend. According to Defendant, Plaintiff merely issued a subpoena for him to do so. Plaintiff 's counsel indicated he would have no objection to Defendant calling McClellan at trial even though Defendant failed to list him as a trial witness and Plaintiff subpoenaed him. ECF 76. Given that McClellan possesses actual knowledge about Plaintiff's allegations suggesting that he was able to return to work earlier than when Defendant hired him back, McClellan is a better witness than Bailey – who has no such personal knowledge of these key facts. McClellan can testify to all the topics Bailey can – such as Plaintiff's job description – as well as his personal knowledge surround the time period in question, and thus, Bailey's testimony would be duplicative of McClellan's.

Thus, the Court finds that because Bailey's testimony will be duplicative of McClellan's and shall be excluded for this reason; but also, given Defendant's failure to comply with Rule 26 by failing to disclose Bailey as a witness is a direct violation of Rule 26, in accordance with Rule 37 and the Court of Appeals' four-part *Nicholas* test, her testimony will be excluded.

**2. Motion to exclude expert testimony of Defendant's witness, Dr. Natalie Hartenbaum, M.D., from trial**

Plaintiff argues that Hartenbaum, Defendant's chief medical director, who Defendant proffered on its witness list as such, should not be permitted to provide expert testimony at trial. Plaintiff notes that as a fact witness, Hartenbaum has no first-hand knowledge concerning Plaintiff, nor any personal involvement in the decision as to when to reinstate Plaintiff. Plaintiff further explains that Hartenbaum did not even work for Defendant when Plaintiff was withheld from returning to his job. ECF 83, p. 4. Plaintiff notes that Defendant's proffer in its witness list suggests that Hartenbaum will testify about "FRA 'mandates,' medical standards for governing fitness-for-service determinations, return-to-work evaluations for safety-sensitive employees, the assessment of medical and occupational risks, and [Defendant's] practices concerning reasonable

accommodation[s]." ECF 83, p. 4. Plaintiff suggests that this sort of testimony would be nothing more than medical, regulatory, and health expert opinion testimony – not testimony related to any facts Hartenbaum personally observed. Plaintiff claims that because Hartenbaum was not identified as an expert witness, and because she has no first-hand knowledge of anything related to this matter, she must be excluded as a witness.

In response, Defendant counters that Hartenbaum will not testify as an expert witness and will not provide "'after-the-fact opinions' about what occurred." ECF 111, p. 3. Defendant acknowledges that Hartenbaum "cannot testify as to what the prior CMO's internal thought process was when [the prior CMO] made the decision not to medically clear Plaintiff to return to work . . . or what she would have done in the prior CMO's place." Id.

However, Defendant does plan to ask Hartenbaum about the process Defendant uses relating to return-to-work evaluations for employees in safety-sensitive positions after medical leave. ECF 76, p. 2. Defendant indicates that Hartenbaum will authenticate business records and will testify regarding her responsibilities as the Chief Medical Officer for Defendant, the "role of [Defendant's Health Services department] in clearing employees to return to work, and the timeline of this case." ECF 111, p.3. Defendant has also indicated that Hartenbaum will testify about "the mandates of the Federal Railroad Administration relating to the determination by the [chief medical officer] of an employee's fitness for service[,] . . . the practices of [her department] with respect to consideration of requests for reasonable accommodation, . . . the engagement of [her department] in the interactive process with employees[,] . . . the Chief Medical Officer's interactions with employees and supervisors relating to determining essential functions of positions and the assessment of job related risks, as well as the role of [Defendant's] Vocational Rehabilitation Services." ECF 76, p. 2. Most disturbingly, Defendant also suggests

that Hartenbaum "will testify regarding the actions documented by [her department] in this matter, including the medical records received by [her department], [her department's] communications and correspondence with Plaintiff, and the individualized assessment conducted based on the documentation provided." Id.

Federal Rule of Evidence 701 governs opinion testimony by lay witnesses:

> If the witness is not testifying as an expert, testimony in the form of an opinion is: limited to one that is (a) rationally based on the witness's perception, (b) helpful to a clearly understanding of the witness' testimony or the determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Fed. R. Evid. 701.

The Advisory Committee Notes to Rule 701 notes that 701 was amended "to eliminate the risk that the reliability requirements set forth in Rule 702 will be evaded through the simple expedient of proffering an expert in lay witness clothing." See Advisory Committee Note to 2000 Amendment. Under the 2000 Amendment, a witness' testimony must be scrutinized under the rules regulating expert opinion to the extent that the witness is providing testimony based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

In *Donlin v. Philips Lighting N. Am. Corp.*, the Court of Appeals for the Third Circuit noted:

> Subsection (c) was added in 2000 to "eliminate the risk that the reliability requirements set forth in Rule 702 will be evaded through the simple expedient of proffering an expert in lay witness clothing." Fed.R.Evid. 701 advisory committee's notes for the 2000 amendments [hereinafter Notes to 2000 Amendments]; *see also United States v. Garcia,* 413 F.3d 201, 215 (2d Cir.2005) ("The purpose of [subsection (c) ] is to prevent a party from conflating expert and lay opinion testimony thereby conferring an aura of expertise on a witness without satisfying the reliability standard for expert testimony set forth in Rule 702."). As a result, lay testimony must "result[ ] from a process of reasoning familiar in everyday life," as opposed to a process "which can be mastered only by

specialists in the field." Notes to 2000 Amendments.

*Donlin*, 581 F.3d 73, 80–81 (3d Cir. 2009) (footnote omitted).

As related to this case, Rule 701 precludes Hartenbaum, who was proffered strictly as a lay witness, from providing expert opinion testimony about Plaintiff's medical condition, despite her education and expertise as a medical doctor.

Because Hartenbaum did not have any direct contact with Plaintiff, and because she did not work for Defendant during the time Defendant barred Plaintiff from returning to his job, and because Defendant did not proffer her as an expert witness, Hartenbaum is precluded from testifying as to Plaintiff's medical condition and whether the mandates of the Federal Railroad Administration (or any other reason) caused the then-chief medical officer from preventing Defendant from returning him to his job. Similarly, Hartenbaum cannot provide expert opinion testimony whether, at the time Plaintiff was excluded from returning to his job as an electrician at Juniata, the then-chief medical officer for Defendant made an appropriate decision not to reinstate Plaintiff.

Improperly, Defendant appears to be a attempting to have Hartenbaum, the current Chief Medical Officer, who has no personal knowledge of anything related to this case, testify by "reading" medical records of the prior Chief Medical Officer, without ever filing an expert report, and not ever designating her as an expert, under the guise of "lay opinion."

A witness who lacks personal knowledge and wishes to testify about medical records of someone else is not a lay witness, giving so-called lay opinions based upon those records, but said witness is an expert witness — requiring an expert report and listed as an expert witness in the initial disclosure pursuant to the case management order.

Importantly, the Court understands that the medical doctor who served as Defendant's Chief Medical Officer during the time period in question, and who authored the medical records and has personal knowledge of Plaintiff's claim, is allegedly unwilling to come to Pittsburgh and testify. However, trial counsel, in this more than three-year-old case, could have taken the doctor's deposition for use at trial, in her hometown, using a subpoena from the applicable district court, if necessary, or arranged for her trial testimony by video. During the pretrial conference in this matter, Defense Counsel admitted that he had failed to do so.

Thus, Hartenbaum cannot provide expert testimony as a lay witness. She cannot read into evidence documents members from her department (especially those of her predecessor CMO) wrote in relation to why Plaintiff should be withheld from his job. Furthermore, given that she can provide no lay testimony that would assist the trier of fact determine if Defendant was justified in its decision to delay Plaintiff's return to work, she will not be permitted to testify as to any factual events relevant to these proceedings given that she has neither observed nor personally perceived anything related to why Defendant chose not to reinstate Plaintiff when Plaintiff requested to be reinstated. Accordingly, Plaintiff's motion will be granted so as to preclude Hartenbaum from providing the proffered testimony in this case.

**3. Motion to exclude testimony or other evidence suggesting that the FRA compelled Defendant to withhold Plaintiff from service**

On its face, this appears to be a moot issue. Given the Court's ruling above with respect to the now-excluded testimony of Bailey and Hartenbaum, Defendant will not be able to introduce the FRA regulations addressing medical qualifications. However, during the pretrial conference held on September 1, 2026, Defendant apprised the Court that Ernest McClellan was available to testify, live, negating the need to have someone read in portions of his deposition.[3]

[3] Plaintiff, who was the only party to place Ernest McClellan on a witness list, had no objection to

Given that McClellan is not a medical expert, Defendant's only witness can provide lay testimony only. In addition, Defendant in its response to Plaintiff's motions indicated that, "Norfolk Southern sees this as a non-issue, as Norfolk Southern has never argued, nor does it intend to argue, that the Federal Railroad Administration ("FRA") regulations compelled Norfolk Southern to not medically clear Plaintiff to return to work." ECF 111, p.4. Accordingly, any testimony or other evidence suggesting the FRA compelled Defendant to withhold Plaintiff from service will be excluded.

**4. Motion to exclude testimony or documentary concerning the CBA and/or use of a PLB award (Exhibits D1, D3, D4 and D14)**

Plaintiff's motion assumes that Defendant plans to use D1, D3, and D4 to demonstrate that it could not accommodate Plaintiff without violating the CBA and its seniority rules. Plaintiff argues that he does not intend to claim that Defendant "was required to displace another employee, disregard seniority or violate any provision of the CBA." ECF 83, p. 5. In addition, Plaintiff contends that his PLB award (D14) should be excluded based on the same reasoning, and because introduction of the PLB award is not necessary to prevent a duplicate wage recovery.

Defendant claims that Plaintiff put the CBA (Exhibit D1) and the Seniority Rosters (Exhibits D3 and D4) at issue during discovery when Plaintiff testified that he could have been accommodated by being placed to work in the tractor motor shop where no heights or locomotive movements were required. ECF 111, p. 5. Defendant claims that the CBA prevents Defendant from simply transferring Plaintiff to the tractor motor shop. Id. Defendant cites *Kralik v. Durbin*, 130 F.3d 76, 83 (3d Cir. 1997), for the principle that an accommodation to one

---

Defendant calling McClellan to testify. Plaintiff indicated he would not be calling McClellan in his case-in-chief.

employee that violates the seniority rights of other employees who are all subject to a CBA, is not a reasonable accommodation under the ADA.

The Court finds that unless Plaintiff opens the door -- by arguing that a specific accommodation could have been made thereby enabling him to return to work – and Defendant can demonstrate that the specific accommodation would have violated the CBA, only those relevant portions of the CBA may be admitted into evidence to rebut Plaintiff's accommodation claim. These portions of the CBA would likely have be introduced on cross-examination through Plaintiff's testimony, given the Court's ruling above with respect to the now-excluded testimony of Bailey and Hartenbaum. Thus, D1, D3, and D4 will only be admitted for the limited purpose of rebutting a specific accommodation assertion which violates the CBA, if Plaintiff asserts same.

The Court further finds that D14 will be excluded from evidence regardless of Plaintiff's accommodation assertions given that the Court finds this Exhibit to be a monetary recovery document demonstrating that Plaintiff received some compensation for his time off-work, and is more prejudicial than probative under Federal Evidence Rule 403. The parties may choose to enter into a stipulation as to the applicable back pay dates or the jury will be permitted to calculate Plaintiff's wage loss and other damages – if any are awarded – without considering any other recovery Plaintiff received. If the parties cannot stipulate to back pay dates, the Parties and Court will work together following the verdict to mold the verdict to prevent any double recovery.

**5. Motion to exclude benefits Plaintiff received while he was out of work**

Plaintiff's motion asks the Court to exclude D16 and D17 as they demonstrate collateral-source benefits Plaintiff received. D16 is a disability claim approval letter from Aetna notifying

Plaintiff that his disability claim was approved for 12 months. D17 is a Norfolk Southern document signed by Dr. Francesca K. Litow, M.D., a Norfolk Southern doctor who certified Plaintiff's disability dates.

Defendant's response suggests that neither D16 nor D17 establish any sort of dollar amount that Plaintiff received. Further, Defendant agrees, generally, with the proposition that disability benefits are collateral sources and should not be deducted from any back pay award. However, Defendant claims that it plans to use D16 and D17 to refute Plaintiff's claims of financial distress which caused him to suffer emotional harm, and thus, entitle him to compensatory damages for his emotional distress over his financial situation.

In *McKenna v. City of Philadelphia*, the United States District Court for the Eastern District of Pennsylvania noted:

> The United States Court of Appeals for the Third Circuit has held that back pay awards should not be reduced by the amount of any unemployment or social security benefits received by the plaintiff. *Maxfield v. Sinclair Int'l,* 766 F.2d 788 (3d Cir.1985) (social security benefits); *Craig v. Y & Y Snacks, Inc.,* 721 F.2d 77 (3d Cir.1983) (unemployment benefits). . . .The rule, developed in tort law, provides that a payment for a plaintiff's loss from a source collateral to the defendant, such as a plaintiff's private insurance, should not be applied to reduce the defendant's damages. *See Maxfield* at 793–94; *Craig* at 83. . . . The United States Court of Appeals for the Third Circuit has yet to consider whether worker's compensation benefits should be deducted from an award of back pay. Those district courts in this circuit to have considered the issue have applied the reasoning of *Maxfield* and *Craig* and found that, unlike unemployment and social security benefits, worker's compensation benefits are not collateral payments and therefore should be deducted from back pay. *See Russell v. Bd. of Pub. Ed.,* 2009 WL 689058 at *2 (W.D.Pa. March 11, 2009); *Mason v. Assoc. for Independent Growth,* 817 F.Supp. 550, 556–58 (E.D.Pa.1993); *see also McLean v. Runyon,* 222 F.3d 1150, 1156 (9th Cir.2000); *but see Moysis v. DTG Datanet,* 278 F.3d 819 (8th Cir.2002) (holding that worker's compensation payments should not be deducted from a back pay award under the ADA). These cases reason that the justification for the collateral source rule—that a wrongdoer should not get the benefit of payments that come to a plaintiff from a source collateral to the defendant—does not apply to worker's compensation benefits because, unlike unemployment or social security benefits, worker's compensation is paid by the employer directly or by the employer's insurance. *See Mason,* 817 F.Supp. at 557.

*McKenna*, 636 F. Supp. 2d 446, 457 (E.D. Pa. 2009).

The Court finds the reasoning of *McKenna*, *Russell*, and *Mason* persuasive. Thus, D16 and D17, which demonstrate that the collateral benefits Plaintiff received came from sources other than Defendant, will be excluded from evidence. If Plaintiff's evidence demonstrates financial hardship, and if that evidence of his financial hardship could fairly be met by evidence of the receipt of the benefits described in D16 and/or D17, the Court will give serious reconsideration to allowing this evidence to be introduced.

**B. Defendant's Motions (ECF 84, 86, 88, 90, 92, 94)**

**1. Motion to exclude Plaintiff's exhibits purportedly relating to back pay Damages, specifically P8 and P9 (ECF 84)**

Exhibit P8 is a two-page document where page one is titled, "3 Above/3 Below Calculation based on 2017 Seniority Roster, " and page two is titled, "3 Above/3 Below Calculation based on 2018 Seniority Roster." Exhibit P8 was produced by Defendant in answer to an interrogatory asking it to identify the compensation earned by the three electricians immediately above and below Snyder on its seniority rosters in 2017 and 2018.

Exhibit P9 was produced by Plaintiff and contains Plaintiff's W2s from 2019 and 2020.

Defendant's motion in limine seeks to specifically exclude P8 and P9 (and any testimony or reference relating to those exhibits) on several grounds: (1) lack of authentication; (2) Plaintiff's failure to identify any witness with personal knowledge of P8's contents under Federal Rule of Evidence 602; (3) inadmissible hearsay under Federal Rule of Evidence 802, to which no exceptions apply; and (4) the prejudice to the Defendant outweighs the probative value of these exhibits.

Plaintiff counters that Defendant's "lack of authenticity" argument fails because Defendant produced one of these documents (P8) in response to Plaintiff's discovery requests, and thus, by challenging the authenticity of documents Defendant itself produced, Defendant's argument fails. Defendant would have prepared Plaintiff's W2s for the IRS and Plaintiff, thus, Plaintiff can authenticate P9.

Generally, courts treat documents produced by an opposing party in discovery as authentic when offered against that party. *See, Penguin Books U.S.A. Inc. v. New Christian Church of Full Endeavor,* 262 F.Supp.2d 251, 259 (S.D.N.Y.2003) ("Using a document supplied by another represents the party's intended assertion of the truth contained in that document."). In *Walsh v. Fusion Japanese Steakhouse, Inc.*, the United States Court for the Western District of Pennsylvania held:

> Under Rule 901, to authenticate evidence, the "proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is," and may do so via "testimony that an item is what it is claimed to be." Fed. R. Civ. P. 901 (a)–(b). "The proponent need not conclusively prove that a piece of evidence is authentic; '[a]ll that is required is a foundation from which the fact-finder could legitimately infer that the evidence is what the proponent claims it to be.' " *Langbord v. United States Dep't of the Treasury*, No. 06-5315, 2011 WL 2623315, *1, 2011 U.S. Dist. LEXIS 71779, *5 (E.D. Pa. July 5, 2011) (citing *McQueeney v. Wilmington Trust Co.*, 779 F.2d 916, 928 (3d Cir. 1985)). The Third Circuit has recognized that the "burden of proof for authentication is slight" and that circumstantial evidence may be sufficient. *McQueeney*, 779 F.2d at 928.

*Walsh*, 585 F. Supp. 3d 766, 774 (W.D. Pa. 2022). Accordingly, given the provenance of Exhibit P8, these documents will not be excluded on the grounds of lack of authenticity. As noted, Exhibit P9, which was also prepared by Defendant for the IRS and Plaintiff, can be authenticated by Plaintiff during his trial testimony.

Next, the Court finds that P8 and P9 are not hearsay. The two documents that comprise P8 were created and produced by Defendant, and are now being offered against Defendant.

Accordingly, these documents fall within Rule 801(d)(2), and thus, are not hearsay. Exhibit P9 is comprised of two of Plaintiff's W-2 reports – one for year ending 2019 and one for year ending 2020. These documents are also not hearsay in that they are business records prepared by Plaintiff's employer to report factual data (*i.e.*, earnings, taxes withheld, etc.) to the IRS with respect to the work Plaintiff performed in 2019 and 2020, and they are now being offered against Defendant to substantiate Plaintiff's damage claims.

Lastly, the Court finds that the colleague wage comparisons (P8), and the W-2 forms (P9), to be much more probative and barely – if at all – prejudicial under Federal Rule of Evidence 403. Plaintiff has made a claim for back pay, and Defendant produced one set of these documents to Plaintiff during discovery, P8, and prepared the other set of documents, P9, as required and as part of its normal business operations; and thus, they are relevant and highly probative of the back pay damages Plaintiff seeks to prove in this case.

**2. Motion to exclude Plaintiff's EEOC Charge (P4) and the EEOC Determination (P5) letters (ECF 86)**

Defendant's motion in limine seeks to specifically exclude P4 and P5, and any testimony or reference relating to those exhibits, under Federal Rules of Evidence 402 and 403, claiming these documents are more prejudicial than probative. Defendant also seeks a ruling from this Court that Plaintiff may not offer testimony speculating as to Defendant's motives for not reinstating him as an electrician – relying upon Fed.R.Evid. 602 and 701, and requests that the Court prevent his counsel from offering unsubstantiated theories (presumably during his closing argument).

Plaintiff counters that the EEOC Charge letter (P4) is being offered to demonstrate the date and fact that Plaintiff filed an EEOC charge so that the jury may infer that his charge letter is what spurred Defendant to take action with respect to Plaintiff's multiple requests to return to

work. With respect to the EEOC Determination (P5), Plaintiff suggests that any risk of unfair prejudice can be eliminated with a curative instruction to the Jury.

**a. EEOC Charge (P4)**

Charges of employment discrimination contain statements made by the plaintiff when initiating administrative proceedings, and courts typically exclude these charges as inherently unreliable hearsay because they are prepared in anticipation of litigation. *See, e.g., Stolarczyk ex rel. Est. of Stolarczyk v. Senator Int'l Freight Forwarding, LLC*, 376 F. Supp. 2d 834, 840 (N.D. Ill. 2005).

The Court finds that the EEOC Charge letter is cumulative and contains instances of hearsay. Thus, the Court agrees with Defendant that to admit the letter in its entirety would simply allow Plaintiff to admit otherwise inadmissible material through a backdoor. Accordingly, Defendant's motion in limine to exclude Plaintiff's EEOC Charge letter (P4) shall be granted.

However, Plaintiff shall be permitted to either redact any objectional material and thereafter seek admission of the same and/or reference at trial any relevant and admissible material contained within the letter, provided the proper foundation has been laid by the appropriate trial witness. For example, the Court finds that Page 1 of EEOC Charge letter could be admissible to demonstrate that plaintiff did -- in fact -- file a claim with the EEOC, should this be a relevant fact to the trial of this matter; however, page 2 contains Plaintiff's opinions as to why Defendant refused to allow him to return to work, and is therefore, not admissible. The Court also finds that Defendant's counsel will not be precluded from drawing inferences during his closing argument, as long as his inferences are drawn from that which has been introduced into evidence. Thus, the Court will grant this motion as this argument is over the EEOC Charge

letter as a whole, in an unredacted state. Even if Plaintiff were to agree to redact the document, he would need to demonstrate to the Court how the redacted document is relevant to the issue(s) before the jury.

**b. EEOC Determination (P5)**

"A District Court has the discretion to exclude probative EEOC Letters of Determination where the negative factors listed in Rule 403 substantially outweigh the probative value of the EEOC determinations." *Coleman v. Home Depot, Inc.*, 306 F.3d 1333, 1345 (3d Cir. 2002).

Following *Coleman*, the United States District Court for the Middle District of Pennsylvania in *Waters v. Pennsylvania Hum. Rels. Comm'n*, summarized the law within the Third Circuit as follows:

> In the year following [*Coleman*], cognizant of the deference accorded to a district court's discretion in this context, have consistently excluded investigative and evaluative agency findings for various reasons. *See e.g.*, *Martinelli v. Penn Millers Ins. Co.*, 269 Fed.Appx. 226, 229 (3d Cir. 2008) (upholding a district court's decision to exclude an EEOC letter of determination from trial based on the potential to confuse the jury and unfairly prejudice the plaintiff); *Haas v. Wild Acres Lakes Prop. & Homeowner's Ass'n*, No. 3:13-CV-898, 2014 WL 980785, at *5 (M.D. Pa. Mar. 13, 2014) (excluding from trial an EEOC determination letter because the probative value is "substantially outweighed by prejudice resulting from confusion of the issues, undue delay and presentation of cumulative evidence"); *Miller v. Tyco Elecs., Ltd.*, No. 1:10-CV-2479, 2012 WL 5509710, at *2 (M.D. Pa. Nov. 14, 2012) (Kane, J.) (granting plaintiff's motion to exclude evidence related to the PHRC's findings of no probable cause on the basis that the probative value of such evidence was substantially outweighed by the danger of unfair prejudice, undue delay, and confusing the issues); *Cambra v. Rest. Sch.*, No. CIV.A.04-2688, 2005 WL 2886220, at *3 (E.D. Pa. Nov. 2, 2005) (excluding EEOC determination letter under Rule 403 because its "minimal probative value is substantially outweighed by the danger of unfair prejudice ..., is cumulative and [ ] has the potential to confuse the issues and mislead the jury") (collecting cases).

*Waters*, No. 1:13-CV-2652, 2017 WL 24670, at *3 (M.D. Pa. Jan. 3, 2017).

The Court finds it would be highly prejudicial to permit the jury to hear the legal conclusions on the ultimate issue in this case -- *i.e.*, whether Plaintiff could return to his job as an

electrician when he claims he was cleared by his physicians to do so, and not at a later date when Defendant permitted him to do so. The jury may give undue weight to the EEOC's findings and accordingly abdicate its role as the fact finder. *See Cambra v. Rest. Sch.*, 04cv2688, 2005 WL 2886220, at *4 (E.D. Pa. Nov. 2, 2005) ("this case will be tried before a jury that may give undue weight to a letter written by a government agency"). Drawing from the reasoning of other district courts in this Circuit that have excluded EEOC Determination letters, the Court agrees that "[a] jury could easily confuse the meaning of the document as suggestive of the jury's ultimate legal conclusion." *Kirby v. J.C. Penney Corp.*, No. 2:08-CV-1088, 2009 WL 3572494, at *2 (W.D. Pa. Oct. 26, 2009). Accordingly, P5 will be excluded.

**3. Motion to exclude Plaintiff's work clearance letters (P1 – P3) never provided to Defendant (ECF 88)**

In its Motion in Limine to exclude Plaintiff's work clearance letters (letter dated March 20, 2017, signed by R. Mark Richardson, M.D., PhD (P1), letter dated April 24, 2017, signed by Joseph D. Clark, M.D. (P2), and letter dated July 25, 2017 signed by Levi DeLozier, M.D. (P3)), Defendant claims it never received any of the three work clearance letters until this litigation arose, years after Defendant permitted Plaintiff to return to work. Defendant claims that these letters are inadmissible hearsay under Fed.R.Evid. 801, and further notes that they cannot be authenticated under Fed.R.Evid. 901. Defendant further questions whether these letters are the "complete writings," and argues because the letters are addressed to no one in specific who worked for Defendant, Fed.R.Civ.P. 602 also precludes their admission. Finally, Defendant further contends that the letters are more prejudicial than probative under Fed.R.Evid. 403.

Plaintiff counters that if he "establishes that he supplied a letter or communicated its substance" to Defendant, "the evidence is admissible to show notice and its effect on the decision-makers regardless of whether every statement in the letter is accepted as true." Plaintiff

also argues that, apart from notice, "a treating physician's contemporaneous assessment is probative evidence" of Plaintiff's actual medical condition, provided Plaintiff establishes an applicable hearsay exception.

As a threshold matter, the Court begins by noting that Plaintiff plans to present Joseph D. Clark, M.D. via a video link during the trial. Therefore, Defendant's authenticity argument will likely be moot as to P2, as will any hearsay argument. Furthermore, Plaintiff can testify what – if anything – he did with each of the three letters at the time he received same – if in fact he was given these letters by his providers – and his testimony in this regard will not be excluded. Therefore, all three letters may be authenticated.

The Court finds that these letters are relevant and, in fact, germane, to the central issue in this case: whether Plaintiff was wrongly withheld from returning to his position as an electrician for Defendant earlier in time.

The more pressing matter is whether the two remaining letters (P1 and P3) can clear a hearsay hurdle. Plaintiff plans to offer the letters for the truth of matters they assert – essentially that Plaintiff was well enough to return to his job with Defendant at a point in time earlier than when Defendant reinstated him. Given that Dr. Clark will be present to testify during trial via video, P2 will likely be able to be admitted. The Court will defer ruling on the P1 and P3 letters until they are offered at time of trial.

**4. Motion to exclude Plaintiff's safety letters (P6, P12) prepared by Defendant (ECF 90)**

In its motion in limine to exclude Plaintiff's safety letters (P6, P12), Defendant argues that they are not relevant to the time period in question. Defendant identifies that time period as "March/April 2017 to January 14, 2018" and bases this time frame on, "[t]he central issue in this case [being] whether [Defendant] properly determined that Plaintiff was not medically cleared to

return to work following his brain surgery and seizure condition." According to Defendant, the two exhibits in question reference and/or commend Plaintiff on his safe work practices but do so "outside the relevant timeframe." ECF 90, p. 2.

Plaintiff responds that "these letters help explain why being treated as an unacceptable safety risk was so devastating" to Plaintiff, someone whom Defendant had previously praised for his safety and performance. ECF 110, p. 11. Plaintiff explains that his distress of being thought of as a safety risk contributed to his emotional distress.

The Court finds that these documents are relevant to demonstrate that Plaintiff received commendations from Defendant and Plaintiff can testify whether he took pride in those acclamations. Thus, they are relevant to laying the foundation for some of the intangible damage elements Plaintiff claims he suffered – such as the emotional distress component.

**5. Motion to limit the testimony of Tom Owens (ECF 92)**

Defendant argues that Tom Owens, a union representative, should not be permitted to testify because he does not possess first-hand knowledge about the job duties of an electrician at the Juniata Shop where Plaintiff was employed as an electrician. Defendant contends that due to his lack of first-hand knowledge about the job duties in Juniata, he must be precluded from testifying in this case. Further, Defendant claims any statement Owens would make regarding Plaintiff's job duties, safety-sensitive tasks, shop operations, the availability of accommodations, and damages would be prohibited under Fed.R.Evid. 602, 701, and 702. Essentially, Defendant asserts that Owens' understanding of Plaintiff's job duties is limited to what Plaintiff himself shared about his job duties or information Owens obtained during Plaintiff's trial preparation.

Plaintiff counters that one of Defendant's own proposed exhibits identifies Owens as the employee member who participated in a grievance proceeding concerning Plaintiff's delayed

return. Plaintiff urges the Court not to exclude Owens' testimony "wholesale" but rather to evaluate Owens' ability to respond within the Rules of Evidence on a question-by-question basis.

The Court concurs with Plaintiff's approach in this instance. First, Owens will be permitted to testify about his own actions, communications, and first-hand observations with respect to the matters he personally handled in Plaintiff's grievance process. Secondly, if Owens possesses specific knowledge related to electrician seniority, assignments, wages, overtime, and union consequences, as the General Chairman of IBEW, and if he has first-knowledge of what the seniority, assignments, wages, overtime, and union consequences were for electricians during the time period in question, he will be permitted to testify as to those matters as well. The Court will defer ruling on any other general area of inquiry and will rule on objections to specific questions.

**6. Motion to exclude Plaintiff's Exhibit P7 (ECF 94)**

Defendant, without any explanation as to what document P7 is, argues that it should be excluded under Fed.R.Evid. 402, 203, 701 and 802.

Plaintiff explains that P7 relates to Federal Railroad Administration ("FRA") regulations. Plaintiff has indicated that he will not offer P7 if Defendant, its witnesses, and counsel are prohibited from arguing or implying that FRA regulations required, dictated, expected, or otherwise supplied a regulatory basis for keeping him out of service. (Plaintiff also proposed this reciprocal evidentiary limit in his own motion in limine.) The Court granted Plaintiff's motion in limine to exclude testimony or other evidence suggesting that the FRA compelled Defendant to withhold Plaintiff from service. See above at "3."

The Court finds that if Defendant opens the door to reference the RFA regulations, then Plaintiff may attempt to offer P7 to refute Defendant's position in the matter. Accordingly, the Court will defer its ruling on this final motion in limine.

**ORDER**

AND NOW, this 1st day of September, 2026, for the reasons set forth in greater detail above, the Court hereby ORDERS as follows:

1. Plaintiff's Motion in Limine (ECF 83) to preclude the testimony of Jennifer Bailey (ECF 83) is GRANTED.

2. Plaintiff's Motion in Limine to preclude the expert testimony of Dr. Natalie Hartenbaum, M.D. (ECF 83), is GRANTED.

3. Plaintiff's Motion in Limine to exclude testimony or other evidence suggesting that the FRA compelled Defendant to withhold Plaintiff from service (ECF 83), is GRANTED.

4. Plaintiff's Motion in Limine to limit the CBA evidence and/or use of the PLB award (ECF 83), is GRANTED IN PART (Exhibit D14 is excluded from evidence, D1, D3 and D4 are excluded unless that unless Plaintiff opens the door by arguing that a specific accommodation could have been made thereby enabling him to return to work and Defendant can demonstrate that the specific accommodation would have violated the CBA) .

5. Plaintiff's Motion in Limine to exclude benefits Plaintiff received while he was out of work (ECF 83), is GRANTED. Exhibits D16 and D17 are excluded from evidence.

6. Defendant's Motion in Limine to exclude Plaintiff's exhibits purportedly relating to back pay damages and to exclude P8 and P9 (ECF 84) is DENIED.

7. Defendant's Motion in Limine to exclude Plaintiff's EEOC Charge (P4) and the EEOC Determination (P5) letters (ECF 86) is GRANTED. Exhibits P5 is excluded from evidence; Exhibit P4 is excluded from evidence in its current state.

8. Defendant's Motion in Limine to exclude Plaintiff's work clearance letters (ECF 88) is DENIED IN PART as to P2, but and the Court will DEFER RULING on P1 and P3 until trial.

9. Defendant's Motion in Limine to exclude Plaintiff's safety letters (P6, P12) prepared by Defendant (ECF 90) is DENIED.

10. Defendant's Motion in Limine to limit the testimony of Tom Owens (ECF 92) is DENIED IN PART and DEFERRED IN PART.

11. The Court's Ruling on Defendant's Motion in Limine to exclude Exhibit P7 (ECF 94) is DEFERRED.

**SO ORDERED** this 1st day of September, 2026

s/ Arthur J. Schwab
Arthur J. Schwab
United States District Judge